Good morning. I would like to address three issues that can be clarified. The waiver that was in this case was invalid. And I would also like to address the fact that the conditions that were imposed were vague and overbroad, and that there was insufficient evidence of a violation. On that last issue, the vague and overbroad, we have two cases that seem to go opposite ways. One of them is B that goes the prosecutor's way, and one of them is Guagliardo that goes your way. Could you tell me what we should say if we were to go your way and follow Guagliardo? Well, first of all, B did not address the same issues. B did not go to whether the conditions were overbroad or vague. That was strictly a First Amendment issue that was addressed in B, and the Court did not deal at all with any arguments on vagueness or overbreadth. Guagliardo on the other hand. So what we would say is Guagliardo is the vague and overbreadth case, and B is the First Amendment case? Yes. And you're making a vagueness and overbreadth claim like Guagliardo. Yes. And Guagliardo is a Ninth Circuit case, a very recent one, and they did find that the possession or the prohibition of possession of any pornography whatsoever was unconstitutionally vague. In this case as well, and this was referring to Condition No. 9, which was the prohibition of possession of any materials that would be sexually stimulating or sexually oriented, or that were sexually stimulating or sexually oriented. In as far as the materials that were prohibited, there wasn't any clear definition. It changed according to what the probation officer decided, whatever she found offensive, and whatever she decided was something that was not to be possessed by Mr. Rios. This was usually after the fact determination, and it ranged from anything like T-shirts, toys, wrestling magazines, homemade movies that had absolutely no sexual content whatsoever, and so forth. I did want to address the waiver issue, because I think that's an extremely important one. I think we need to clarify that there were three separate documents that set out the conditions. The first one is the waiver. I don't know if this was in your brief or not, but are you aware that the statute that, I guess, that he was released on 1993? Right, but wouldn't his length of probation be governed by 18 U.S.C. section 3564, rather than sections 4163 and 64, because they were repealed before his conviction? Are we talking about the wrong statute here? And if it's governed by the other statute, then the petition wouldn't have been timely filed. That's correct. Because we don't get tenure. Why aren't you arguing that? Well, I did not prepare the brief, but at the time, I think that we were going by the date of the release that he was released pursuant to mandatory release. But I understand your argument. I understand the argument in the brief, but it certainly seems to me if the court and the probation officer were calculating the period of time under the wrong statute, which had been repealed, your better argument would be that the correct amount of time had run, so that because he was convicted in 1988, he wasn't in parole when the petition for revocation was filed. I think that if that is the statute that applied at the time, that would be the better argument. Well, don't you know? It's your client. Yes, but we did not calculate it that way. We didn't run across that. We were primarily concerned with the issues that were presented to us. That was the information that was presented to us as far as how probation calculated his term. So you just accepted what the probation officer and the court said were the right time limits and didn't question it? No. We went by the information that we also got from the Bureau of Prisons. Well, even the Bureau of Prisons, they released him pursuant to Section 4163 in the mandatory release, but Section 4163 had been repealed by then, so it seems like it was just in our old form. Well, I guess I don't know that we can supplement it at this point, but if that is the statute, then that's what it is. We did — Your fellow is home free under that analysis. Can we use it since it wasn't raised in the briefs?  I think that the statute would be helpful. I don't think that the statute should prevail over anything else at this point. Do you happen to know whether we can get any guidance from anywhere on what statute to use, whether you use the statute for the time of the conduct or the statute for the time of the conviction? I believe that we had previously raised in the lower court that it was the statute at the time of the sentencing. I'm trying to remember. It seems to me that when I was a district judge, my time spanned the effective date of the guidelines, November 1, 1987. And as I recall, we were still doing pre-guideline sentencing up until 1988 or 89 because it was the time of the conduct that controlled. Do you happen to know if the same thing is true for this timeliness issue on this — on Rios's release? And the reason for that is because it would be an ex — generally, because the guidelines are more strict, it was an ex post facto unconstitutional law to apply them when the conduct had predated the guidelines. So that's the analysis you would look at. That's right. Well, this was a pre-guidelines case, and that was addressed in the lower court, that the conduct had — was alleged in the indictment to have taken place, I think, in 1985. And — Well, his conviction was 88. Yes. He was sentenced in 1988. And the guidelines weren't even in effect then, but I don't think that's relevant. We're talking about a statute. That's correct. I don't have anything available to me here. And, quite frankly, I certainly will look into it. But that was not in our briefs. And we were — we did raise several issues, but — Let's get to something in your brief. You've just got a minute left. Talk about the search for a moment. Is there anything that shows us whether these Fred Flintstone cartoons and such that the pre-sentence report writer was concerned about were in plain view? There — the — I think there was something that was in plain view. You let her into the house. That's correct. So you probably have some consent there. And what I want to know is, once she's in the house, what can she look at? Well, we would, first of all, argue that there was no consent because the conditions that — I know that. But let's say you get past that. Past the conditions being unlawfully imposed and that there was no waiver of — Let's say you get past that. Hypothesize that he consents. She comes to the door and says, can I come in? You have to let me in. And maybe that's true. Maybe it isn't. But in fact, he lets her in. And let's say that's good consent. Is there anything in this record where we can tell whether she went beyond the consent? Yes. She said that she saw something in plain view. And then from there on, she went and searched more thoroughly. There was something that, to the effect that she looked in a drawer and that other items were discovered. It was not that everything was out in plain view. What did she find that wasn't in plain view? I believe some of the additional books, the photograph album, and it may have been some of the other videos. Do you recall which books other than the photo album and which videos were in the drawer? The books were, I think, Beauty's Release. The videos may have been Flavor of Corn. I don't recall that there was a specific testimony as to the location of each of these items. The magazine, I believe, was in plain view. The videos were, I believe, in a cabinet. And the book, The New Epicurean, I believe, was also not in plain view. Thank you, Counsel. Unless my colleagues have other questions. Thank you. Good morning, Your Honors. Nathan Leonardo on behalf of the United States. I have to apologize to the Court. I'm not really familiar with, off the top of my head, with 18 U.S.C. 3564 and exactly what it says. And when it took the place of 18 U.S.C. 4164. November 1, 1987. You, Counsel, I'm just wondering if the U.S. Attorney's Office was aware that the petition was untimely filed and that were a fact. Would you be arguing as vociferously against, I mean, would you be arguing that the wrong one should be applied, the wrong statute should be applied to this? I guess what I'm trying to get to is usually the U.S. Attorney's Office isn't going to take position and knows it's wrong. And obviously this hasn't been brought to your attention. We have a lot of resources available to us to do research and discover these sorts of things. But if, in fact, it's the case that the statute had been repealed at the time of his conviction, which made the petition timely and otherwise it would be untimely, would you be taking a different position? Or can you even answer that right now? Well, normally, well, I guess I would argue that it was at this point way below and because it was never raised in the discipline. Right. But we have an exception in the Ninth Circuit for pure questions of law, which this appears to be. So I do think that it could benefit from being fleshed out below had it been raised in a hearing and briefed by the parties. However, if it was in effect at the time, I mean, a secondary argument, I guess, would be that as Judge Kleinfeld pointed out, that the applicable time would be the time of the conduct itself and not the sentencing. And so that's what I would argue. If that's not the case, then I guess I would not. Or the conviction might be the third possibility. Would you like to have the benefit of supplemental briefing on this question? Yes. I would like to actually look into it further because I'm really not, I wasn't aware of that, of what the court, the issue the court brought up. And there is a question. I'm not prepared to address it. Right. There is a question in my mind. I don't know which time period, whether you look at the conduct, the conviction. I doubt you look at the sentence. But, you know, at least as between those two. Counsel, let me ask you about something that's on my mind here. It's on the overbreadth and also impossibility. The man is prohibited from having sexually stimulating materials. He's prohibited from having sexually oriented materials, which is a different prohibition in his order. And he's prohibited from having any contact with children. Now, if I thought contact with children meant talking with children, babysitting for children, working in a daycare center, that would be easy. But it evidently means brushing past a child on the way into the bathroom at Kmart. And on the sexually stimulating and sexually oriented materials, it means having a Walt Disney cartoon or Fred Flintstone cartoon. What it made me think is, gee, this fellow, if he wants to educate himself on his own sickness, he can't get a medical textbook on pedophilia because it's sexually oriented material. He can't get legitimate erotica or pornography that has nothing to do with children. Just supposing he wants to create some new sexual script or fantasy for himself that isn't felonious. As far as contact with children, he can't avoid it unless he moves to the moon. And I'm thinking in terms of sexually stimulating materials, this fellow can't have any sexual outlet for the kind of sexual orientation he has because it's a felony. So he is probably, well, judging from the things that seem to get him thinking about children, this fellow could be sexually stimulated by looking at a rock that reminded him of a rock that a child once saw. He can't. Everything is stimulating to him because of the nature of his condition. Looking at a children's swing set with no children on it, it would drive him nuts. How can he comply with this and why isn't it overbroad? It's the court's question whether or not. I'm saying is the condition, how can you defend against the argument of appellant that the condition is vague and overbroad in light of the considerations I've just brought up? Well, because, first of all, it was reasonably related to the defendant's own rehabilitation and to the public's protection, which is the primary motive of any condition of probation. The defendant was a sex offender. He was convicted of molesting four children over a period of years, multiple times. His probation officer and therapist testified that the defendant was sexually stimulating by each of the items that was seized in this case. And I don't think you listened to my question, that this fellow would evidently be stimulated by a rock. Well, I mean, I'm looking at these things. The probation officer lied about some of it or else she's a little nuts herself, like where she said he had a bunch of pictures of boys in their underwear. I'm looking at the picture. It's boys and girls on a swim team. And the caption says, age 11, center, with teammates from the Cascade Swim Club in Calgary, a bunch of kids from Alberta or Calgary, Alberta, in their swimsuits. And then she says this other stimulating material. And I'm looking at it. It's the cover of G-rated comedies like The Flintstones. And she says a half-naked boy, he's just wearing caveman shorts and a sash. And I think that's true. And these items do appear innocuous on the face of it to most normal people. But the fact is, this defendant was sexually stimulated by those materials and masturbated to those materials. If he can't go in a place where materials that are sexually stimulating, like The Flintstones, are sold, he can't go to Safeway to get his groceries. He's got a serious problem. And these probationers, their rights can be infringed upon if it's required to. Sure. There's no First Amendment issue. But how can he help? I mean, he rents major pain. Don't even seem to be any geez. Everybody's wearing long pants here, and it's a bunch of soldiers. No. He, I think, admitted that he got off on the sexual stimulation caused by the humiliation and suffering of the children in that movie. It's not understandable. I submit to a normal person. However, the other alternative, I guess, is incarceration. If he is indeed sexually stimulated by everything, and this is going to cause him, as this therapist testified, to progress in his offense cycle and eventually reoffend a second time, well, then close supervision and requirements like this are required in the absence of incarceration. Why should we be willing to defer to the discretion of somebody who tells us that a picture of boys and girls on a swim team in their swimsuits when she falsely tells us that it's a picture of boys in their underwear? Why should we defer to her judgment? Well, I think that's just a semantic. I don't think there's anything semantic about it. It's a false statement. I think underwear and the swimsuits that are pictured there are about the same. They look the same. About the same thing. If we go into the Ritz-Carlton swimming pool in the wrong thing, you don't think anybody would think, oh, that person made a mistake in how they dressed. I guess it all depends on the style of the swimsuit. But in any event, the pictures that you're pointing to were tagged. The ones that were sexually stimulated by the – sexually stimulating to the defendant were tagged by the defendant. And he admitted masturbating to these, and this, again, would perpetuate his offense cycle. And the therapist was not the one who mentioned that I don't believe that those were boys in their underwear. That was the probation officer. But both the therapist and the probation officer testified that these are the type of things that reinforces his deviance and that we'll end up in a new offense cycle. So you're telling me that that's what the probation officer testified, and the implicit message in your making that statement is that we should defer to the probation officer. And what I'm drawing from it is if she said that, she's not worth paying attention to because she's making false statements. Well, I guess the – I mean, the underwear business, a picture of little boys in their – 11-year-old boys in their underwear, that could be a big issue with a pedophile. A picture of a co-ed boys and girls swim team in their bathing suits, that's not kiddie porn. And kiddie porn was not – pornography was not what was prohibited here. It was sexually stimulating materials, and that was further defined by the probation officer to be materials that were sexually stimulating. And she told us something that was false. She told us that it was a picture of boys in their underwear. Well, if the court is concerned with that falsehood and that damages the probation officer's credibility, I would say that the probation officer is corroborated by the defense therapist, who also testified that these items sexually stimulated him. It may be that he stimulated, but she is not corroborated. Either her perception is no good or her truthfulness is no good. And you're telling us that we should accept as not being overbroad or too vague a condition in which the materials that the defendant can have in his house are whatever she deems appropriate. Well, I don't think that she was deeming what was inappropriate or not. It was based on years of therapy that the defendant was in, his own admissions, his ABLE assessments, his psychosexual assessments that pointed to what he was sexually stimulated by, and his own admissions. I don't think that this was some subjective thing, as the defendant wrote in her brief, that would allow the probation officer just to come up with whatever she thought was immoral or something to that effect. This was something that was specifically based on what the defendant was sexually stimulated by and what reinforced his deviance and disallowed him from continuing on his path of rehabilitation. So this was based on much more than just the subjective whim of the probation officer. I thought it says condition number nine, the defendant shall not possess any sexually stimulating or sexually oriented material as deemed inappropriate by the probation officer and or treatment staff or patronize any place where such material or entertainment is available. I thought that that as deemed language did leave it to the subjective judgment of the probation officer who falsified about the underwear. Well, on the face of the condition it is, however, under Romero, this Court's decision on Romero, the condition can be supplemented by further explanations of the probation officer and or therapist or the district court itself. And in this case, the probation officer and the therapist had multiple discussions with the defendant about what type of items they were concerned with, and that was what was sexually stimulating to him. And they had a lot of evidence to support the fact that the, including the defendant's own admission, the fact that these type of items were sexually stimulating to him. And as far as the contact with the child in the bathroom goes, I think the key there is the intent to contact a child. And here there is plenty of evidence that he, in fact, intended to go there in order to meet a new victim and to have contact with that victim. Was there a finding to that effect? A factual finding that the defendant, in fact, knew was going there in order to meet a victim. And he admitted several times to going to public restrooms to try to see a child urinate and possibly touch a child. And when he turned to get a live one, he didn't report it. I don't have a tab on the judge's findings. Could you tell me what page? That would be in the SER. Just tell me the page of the judge's findings. I think probably 191. 191. I didn't remember it that way either. Okay. This is, I think it would be on page 10 of the SER. Where the court finds that he went to these, to the restroom hoping to spot a child urinating. Page 10 of the SER looks like the government's response to the defendant's motion to dismiss. That's no use. Oh, excuse me. I'm looking for what the lawyer said. I'm looking for what the judge found. I understand. I think the judge. Sorry, I was looking at the wrong thing. Maybe we should stick with what Judge Wardlaw found at page 191 at SEC. And I think the judge also may have referred to the government's motion as supporting his decision. So that's the reason that's in there. I can't find the findings that you're saying are the facts. It looks like the judge is giving his conclusion. Essentially. I can't find it right now either, however. I don't know if they exist, I mean. I believe they do. However, the judge did find the defendant in violation for contacting that child, thereby implying that he found that he went there with the intent to contact the child, which was clearly supported by the record. The defendant testified, and I have the sites for. I've taken you way over your time limit. Let me see if any of my colleagues have more questions. Thank you, Counsel. Thank you. United States v. Rios is submitted.
judges: Kleinfeld, Wardlaw, Pogue